

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00113-CV

———————————————

MARJORIE ANDERSON, Appellant

V.

SAFEWAY TOM THUMB, D/B/A TOM THUMB GROCERY, AND BARGREEN
ELLINGSON, INC., Appellees

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-283926-16

Before Bassel, Gabriel, and Kerr, JJ.
Per Curiam Memorandum Opinion

## MEMORANDUM OPINION

### I.  Introduction

Appellant Marjorie Anderson, appearing pro se, appeals the trial court's order granting summary judgment for Appellee Safeway Tom Thumb d/b/a Tom Thumb Grocery and the trial court's order granting the special appearance of Appellee Bargreen Ellingson, Inc.  In six issues, Anderson challenges the factual sufficiency of the evidence and the trial court's swearing her in to give testimony at the special-appearance hearing, allegedly disregarding her evidence, placing what she believed to be unfair restrictions on her ability to present testimony and evidence, and accepting testimony from Safeway's attorney that was allegedly not supported by any evidence. Because we rule against Anderson on each of her six issues, we affirm.

### II.  Factual Background

The facts of the event at the heart of the underlying litigation are not disputed. On February 19, 2014, Anderson went to the Tom Thumb Grocery in Mansfield, Texas, and purchased a salad from the delicatessen.  Anderson sat down in a chair in the dining area at the store.  While Anderson was eating her salad, she noticed a piece of cucumber on the floor near where she was sitting and believed that it was possibly from her salad.  When Anderson reached down to pick up the cucumber, the chair in which she had been sitting "flipped out behind her, propelling and thrusting her onto the . . . floor."  Anderson landed on her bottom with her legs extended in front of her.

### III. Procedural Background

Anderson filed suit against Safeway Tom Thumb, Bargreen Ellingson, and J.H. Carr and Sons Manufacturing.[1] Anderson alleged that all three defendants were liable for gross negligence and that Safeway was also liable, under the theory of premises liability, for the personal injuries that she had sustained in falling from the chair.

Bargreen Ellingson filed an amended special appearance, arguing that it is a Washington resident; that it is incorporated in Washington and has its principal place of business in Tacoma, Washington; that it does not have a registered agent for service of process in Texas; and that it has not purposefully availed itself of the privilege of doing business in Texas. Bargreen Ellingson explained that Safeway had purchased the subject chair through a purchase contract formed with Bargreen Ellingson in California and that J.H. Carr and Sons Manufacturing (also a Washington resident) had manufactured the chair and had shipped it to the address provided by Safeway. Anderson filed a response asserting that she would establish that Bargreen Ellingson has a business location in Fort Worth.

Safeway filed an amended answer that included a general denial and asserted the affirmative defenses of "paid v. incurred" and "contributory negligence/comparative fault." Safeway later filed a traditional motion for summary judgment. In its motion, Safeway stated that the evidence attached to its motion—

---

[1]Anderson ultimately nonsuited defendant J.H. Carr and Sons Manufacturing, and that defendant is not a party to this appeal.

which included deemed admissions and the store's video of Anderson's chair incident—"conclusively negates the following elements of [Anderson's] cause of action: (1) there was [an] unreasonably dangerous condition on the premises; (2) [Safeway] knew or reasonably should have known of the danger posed by said condition; and [(3) Safeway] breached its duty of ordinary care." Safeway further stated that Anderson had failed to provide any answers, objections, or assertions of privilege to Safeway's request for admissions even though Safeway had implicitly extended the deadline to respond to the admissions as Anderson had informally requested. Safeway contended that because there was no evidence of negligence, as shown by the store's video, there could be no recovery for gross negligence.

Anderson filed a response to Safeway's summary-judgment motion admitting that she did not respond to the request for admissions by the June 13 date that she had requested but claimed that she had emailed Safeway's counsel requesting a five-day extension. Anderson did not attach any evidence to her summary-judgment response.

The trial court held a hearing on Bargreen Ellingson's amended special appearance on August 17, 2016, and granted the special appearance in a signed order dated August 23, 2016, thus dismissing Anderson's claims against Bargreen Ellingson for lack of personal jurisdiction. The trial court held a separate hearing on Safeway's motion for traditional summary judgment on August 25, 2016, and granted the motion in a signed order dated August 26, 2016.

4

On September 8, 2016, Anderson filed a "Motion for Rehearing and New Trial" pertaining to each of the trial court's orders.[2] Because Anderson did not request a hearing on her post-judgment motion or take any other action, the trial court sent a letter ten months later stating that the case would be set for dismissal for want of prosecution unless the trial court received a motion to retain the case on the docket.[3] Anderson timely field a motion to retain the case on the docket, which the trial court granted. A hearing on Anderson's "Motion for Rehearing and New Trial" was set for January 5, 2018, but Anderson did not appear. The trial court signed an order denying Anderson's motion as to Safeway. Anderson then perfected this appeal.

## IV. Anderson's Issues on Appeal

Anderson sets forth the following six issues under the "Issues Presented" heading in her brief:

> 1. Did the district court err in placing Plaintiff/Appellant Pro Se in the witness stand and having her sworn in (Party to case, Defendant Bargreen Ellingson's Special Appearance on or about August 17, 2016)?

---

[2]The record does not show that Anderson sought a hearing on her motion for new trial pertaining to the order granting Bargreen Ellingson's special appearance, and no order appears in the record. *See generally* Tex. R. Civ. P. 329b(c) (providing that a motion for new trial that is not determined by written order signed within seventy-five days after the judgment was signed shall be considered overruled by operation of law on expiration of that period).

[3]Anderson did not nonsuit her claims against J.H. Carr and Sons Manufacturing until after she filed her notice of appeal, so those claims remained pending at the time the trial court sent the letter warning of dismissal.

Was Appellant Pro Se denied due process per the 5th and 14th Amendment[s] of the U. S. Constitution?

2. Did the district court err in disregarding critical evidence presented during the hearings?

3. Did the district court err in not allowing Plaintiff/Appellant Pro Se to present documents after the court asked plaintiff if she had them in the courtroom?

4. Did the district court err in not allowing Plaintiff/Pro Se sufficient time to complete her oral statements?

5. Is there factually sufficient evidence to support the judgments of the district Court?

6. Did the district court err in accepting Appellee/Defendant's, Safeway Tom Thumb, allegations and testimony, and vague language and descriptions that were not supported by evidence?

Anderson's "Summary Of Argument" section makes multiple arguments, only one of which is analyzed in the "Argument" section of her brief. Her "Argument" section consists of approximately one and a half pages and appears to address only her sixth issue. Anderson's brief contains citations to two cases and to one rule of civil procedure.

## A. Standard for Pro Se Litigants

Although we liberally construe pro se briefs, litigants who represent themselves are held to the same standards as litigants represented by counsel. *See Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978). To hold otherwise would give pro se litigants an unfair advantage over litigants with an attorney. *Id.* at 185. The Texas Rules of Appellate Procedure require that a brief "contain a clear and concise

6

argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i); *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010) (recognizing that "[t]he Texas Rules of Appellate Procedure require adequate briefing"). The appellate court has no duty to brief issues for an appellant. *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.). In the absence of appropriate record citations or a substantive analysis, a brief does not present an adequate appellate issue. *See generally Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex. 1994) (recognizing long-standing rule that error may be waived due to inadequate briefing). An appellant must discuss the facts and the authorities relied upon as may be requisite to maintain the point at issue. *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). "This is not done by merely uttering brief conclusory statements, unsupported by legal citations." *Id.*

### B. Construing Anderson's First, Third, and Fourth Issues

Because Anderson does not identify any of her arguments in her "Summary Of Argument" section to reflect what issue or issues they correspond to, we reference the paragraph order and attempt to identify the corresponding issue.

### The First Paragraph Appears to Correspond to Anderson's First Issue

In the first paragraph of the "Summary Of Argument" section of Anderson's first amended brief, she argues that the trial court erred by placing her on the witness stand and by having her sworn in during the hearing on Bargreen Ellingson's special

7

appearance.[4]    Anderson further argues that Bargreen Ellingson's counsel was not called to the witness stand and was allowed to cross-examine her.[5]    Anderson contends that she "was prejudiced by the court's decision" and that she "was confused and misled as to what courtroom procedure(s) she might encounter in future hearings, which caused her to place less focus and emphasis on important specific issues that she needed to confront in this case and to attempt to be prepared to address/defend all."

Anderson cites no law to support her four-sentence argument, which appears to correspond to her first issue.  Based on Anderson's limited, unsupported argument, we cannot see how the trial court's actions ran afoul of Texas Rule of Civil Procedure 120a(3), which governs special-appearance hearings and allows the trial court to hear testimony.  *See* Tex. R. Civ. P. 120a(3); *see also Cohn*, 573 S.W.2d at 184–85. Accordingly, we overrule Anderson's first issue.

**The Second Paragraph Appears to Correspond to Anderson's Third Issue**

In the second paragraph of the "Summary Of Argument" section of Anderson's first amended brief, she argues that the trial court erred by excluding and

---

[4]Anderson did not object to being sworn in or raise any objection on this basis in the trial court.  Anderson therefore did not preserve this complaint. *See* Tex. R. App. P. 33.1(a)(1)(A).

[5]Although not clear from Anderson's amended brief, her reply brief makes clear that she is complaining that she was not allowed to cross-examine Bargreen Ellingson's counsel.  Anderson did not preserve this complaint because she did not make a request in the trial court seeking permission to cross-examine Bargreen Ellingson's counsel. *See* Tex. R. App. P. 33.1(a)(1)(A).

failing to consider critical evidence that she had brought with her to the hearing and by not allowing her sufficient time to respond. Anderson further argues that the exclusion of her evidence is so contradictory to the rulings established by the Texas Supreme Court in *Miller v. Wilson* and *Brown v. Davis* as to be clearly wrong and unjust.[6] Anderson's two-sentence argument[7] complaining of unidentified excluded evidence at an unidentified hearing appears to correspond to her third issue.

Anderson does not identify the hearing—either the hearing on Bargreen Ellingson's special appearance that took place on August 17, 2016, or the hearing on Safeway's summary-judgment motion that took place on August 25, 2016—at which her evidence was excluded, nor does she identify what "critical evidence" was excluded. Our review of the records from the two hearings reveals that Anderson was allowed to present evidence during the hearing on Bargreen Ellingson's special appearance[8] but not during the summary-judgment hearing. To the extent that

---

[6]We were not able to locate the two cases on Westlaw other than references to them in briefs filed by pro se appellants in other cases. *See In re Sims*, No. 05-16-00984-CV, 2016 WL 7339213, at *4, *11 (Tex. App.—Dallas Oct. 12, 2016) (appellant's pro se brief); *Ulloa v. Rodriguez*, No. 04-15-00160-CV, 2015 WL 5471668, at *4, *9 (Tex. App.—San Antonio Sept. 9, 2015) (appellant's pro se brief).

[7]The final sentence of the second paragraph under Anderson's "Summary Of Argument" heading appears to address her sixth issue, which is discussed below.

[8]The record demonstrates that the trial court admitted each of Anderson's exhibits over Bargreen Ellingson's hearsay objections and that it allowed her to make a record of what she had been told by various people but stated that it would not consider that testimony as evidence. Because Anderson's testimony about what other

9

Anderson's third issue complains that she was not allowed sufficient time to testify at the special-appearance hearing, the record demonstrates that after she presented her exhibits and made an offer of proof as to what various people had told her, the trial court asked her if she had anything else that she wanted to say, and she responded, "That is all I have right now." To the extent that Anderson's third issue complains that she was not allowed to put on testimony or introduce evidence at the summary-judgment hearing, she was prohibited from doing so because testimony at a summary-judgment hearing is not evidence, she did not attach any evidence to her summary-judgment response, and she did not filed any evidence seven days prior to the hearing. *See* Tex. R. Civ. P. 166a(c), (d). We therefore overrule Anderson's third issue.

**The Third Paragraph Appears to Correspond to Anderson's Fourth Issue**

In the third paragraph of the "Summary Of Argument" section of Anderson's first amended brief, she argues that "[t]he court erred by instructing Mr. Dunne, Defendant Bargreen Ellingson, Inc.['s counsel] to 'go ahead and proceed however you wish.' Appellee/Plaintiff believes the court erred by telling her 'you can proceed, just in a narrative form to tell me–give me your testimony and offer your exhibits.'" [Record references omitted.] Anderson's two-sentence argument appears to correspond to her fourth issue, arguing that the trial court did not allow her sufficient time to complete her oral statements. Because Anderson did not explain how these

people had told her regarding Bargreen Ellingson's corporate structure constituted hearsay, the trial court properly did not consider it. *See* Tex. R. Evid. 802.

10

two statements constitute error, did not cite any law to support her argument, and did not provide any analysis showing how she was harmed, we conclude that she has waived her fourth issue due to inadequate briefing,[9] and we overrule it. *See Fredonia State Bank*, 881 S.W.2d at 284–85; *see also* Tex. R. Evid. 611 (providing that trial court may exercise reasonable control over the interrogation of a witness and the presentment of evidence); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (stating that trial court has broad discretion to maintain control in the courtroom and to prevent what it considers to be a waste of time).

## C.  Remaining Issues

Anderson's remaining issues, which challenge specific evidence presented at the special-appearance hearing and at the summary-judgment hearing and the factual sufficiency of the evidence, are analyzed below in section V.

## D.  Unbriefed Issues

In the final paragraph of her "Argument" section in her first amended brief, Anderson argues in a single sentence that the trial court could have ordered an extension of time for her to conduct discovery, take depositions and affidavits, and identify more experts in this case and requests in her "Conclusion" section that we overturn the trial court's denial of her motion for rehearing and new trial.  Because Anderson did not raise or brief any issue on appeal specifically challenging the denial

---

[9]Anderson failed to adequately brief this issue, even after being notified of the deficiencies in her initial appellate brief.

11

of any motion for continuance or the denial of her motion for rehearing and new trial and because she did not cite any law or provide any analysis for these arguments, we conclude that these arguments are inadequately briefed and are therefore waived. *See Fredonia State Bank*, 881 S.W.2d at 284–85.

## V. The Special-Appearance Hearing and Order

In the fourth paragraph of the "Summary Of Argument" section of Anderson's first amended brief, she argues that the trial court erred by disregarding her evidence that included Bargreen Ellingson's catalog, "which describes Bargreen Ellingson of Texas as a branch location[,] and Appellee's world-wide access website[,] which identifies Dallas/Ft. Worth TX as a location for Bargreen Ellingson, Inc." Anderson's one-sentence argument appears to correspond to her second issue, which argues that the trial court erred by disregarding critical evidence presented during the hearing. The record demonstrates that, over Bargreen Ellingson's hearsay objections, Anderson admitted into evidence the cover page of a Bargreen Ellingson catalog and a page from that catalog listing its branch locations, which include Fort Worth, and a printout from Bargreen Ellingson's website showing that it has a Dallas/Fort Worth office.

In the fifth paragraph of the "Summary Of Argument" section of Anderson's first amended brief, she argues, "Thus the District Court's judgment is not supported by factually sufficient evidence." This argument appears to correspond to Anderson's fifth issue, and because it immediately follows her argument about evidence related to

12

Bargreen Ellingson, we presume that she is challenging the factual sufficiency of the trial court's order granting Bargreen Ellingson's special appearance. We discuss Anderson's second and fifth issues together.

## A. Standard of Review

We review de novo a trial court's decision to grant or deny a special appearance. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). A plaintiff must plead allegations that bring a nonresident defendant within the provisions of the Texas long-arm statute. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002). "Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff." *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). "The defendant can negate jurisdiction on either a factual or legal basis." *Id.* at 659. "Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations." *Id.* "Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction." *Id.*

When, as here, a trial court does not issue findings of fact and conclusions of law in support of a special-appearance ruling, then "all facts necessary to support the judgment and supported by the evidence are implied." *BMC Software*, 83 S.W.3d at 795. However, these findings are not conclusive when the appellate record includes both the clerk's and reporter's records, as it does here, and a party may challenge these

13

findings for legal and factual sufficiency on appeal. *See Waterman S.S. Corp. v. Ruiz*, 355 S.W.3d 387, 402 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (op. on reh'g). But when jurisdictional facts are undisputed, it is a question of law as to whether those facts establish jurisdiction; the reviewing court "need not consider any implied findings of fact" and will consider only the legal question of whether the undisputed facts establish Texas jurisdiction. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018).

## B. Personal Jurisdiction Law

Texas courts may exercise personal jurisdiction over a nonresident if "(1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013) (quoting *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007)). The Texas long-arm statute provides that a nonresident who "does business" in the state is subject to personal jurisdiction. Tex. Civ. Prac. & Rem. Code Ann. § 17.042. The Texas long-arm statute allows Texas courts to exercise personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *BMC Software*, 83 S.W.3d at 795 (citing *U–Anchor Advert., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)). Federal due process requires that the nonresident defendant have purposefully established minimum contacts with the forum state, such that the defendant reasonably could anticipate being sued there. *Curocom Energy LLC v. Shim*, 416 S.W.3d 893, 896 (Tex.

App.—Houston [1st Dist.] 2013, no pet.). The exercise of personal jurisdiction must also comport with traditional notions of fair play and substantial justice. *Id.*

Specific jurisdiction arises when the defendant purposefully avails itself of conducting activities in the forum state, and the cause of action arises from or is related to those contacts or activities. *Kelly*, 301 S.W.3d at 658 (citing *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009)). In a specific jurisdiction analysis, "we focus . . . on the 'relationship among the defendant, the forum[,] and the litigation.'" *Moki Mac*, 221 S.W.3d at 575–76 (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991)). The plaintiff must show a substantial connection between the defendant's contacts with the forum state and the operative facts of the litigation. *Id.* at 585. The "purposeful availment" inquiry has three parts. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. *Id.* at 785. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. *Id.*; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18, 105 S. Ct. 2174, 2184 n.18 (1985). Third, the "defendant must seek some benefit, advantage, or profit by 'availing' itself of the jurisdiction." *Michiana Easy Livin' Country*, 168 S.W.3d at 785.

## C. "Stream of Commerce" Theory

Under the stream-of-commerce theory of personal jurisdiction, "a nonresident who places products into the 'stream of commerce' with the expectation that they will be sold in the forum state" may be subject to personal jurisdiction in the forum. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 46 (Tex. 2016) (quoting *Moki Mac*, 221 S.W.3d at 576–77). But even under that theory, mere knowledge that the product will be sold in the forum state is not enough. *Id.* A product seller's "awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum [s]tate." *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996) (orig. proceeding) (quoting *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 112, 107 S. Ct. 1026, 1032 (1987)). Instead, "additional conduct" must demonstrate "an intent or purpose to serve the market in the forum [s]tate." *Moki Mac*, 221 S.W.3d at 577 (quoting *Asahi Metal*, 480 U.S. at 112, 107 S. Ct. at 1032); *see also J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882, 131 S. Ct. 2780, 2788 (2011) ("The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum [s]tate."); *Moki Mac*, 221 S.W.3d at 577 ("[T]he facts alleged must indicate that the seller intended to serve the Texas market."). Additional conduct of the defendant that may indicate an intent or purpose to serve the market in the forum state includes designing the

16

product for the market in the forum state, advertising in the forum state, establishing channels for providing regular advice to customers in the forum state, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum state. *Asahi Metals*, 480 U.S. at 112, 107 S. Ct. at 1032.

### D. Jurisdictional Facts

Anderson pleaded in her petition that the trial court had personal and subject-matter jurisdiction over Bargreen Ellingson because it had subjected itself to the laws of Texas "by selling products/doing business with businesses located in Texas." In her response to Bargreen Ellingson's amended special appearance, Anderson stated that Bargreen Ellingson did more than place its products in the stream of commerce and that it had advertised in Texas via its interactive website, its products catalog, and its listing in the Greater Fort Worth phone book. Anderson stated that she intended to establish that Bargreen Ellingson has a business location in Fort Worth. Anderson did not attach an affidavit to her response.

Bargreen Ellingson's amended special appearance sets forth the following:

- Bargreen Ellingson is, and was at the time Anderson filed her original petition, a resident of the State of Washington. Bargreen Ellingson is not a resident of Texas.

- Bargreen Ellingson does not have a registered agent for service of process in Texas.

17

- Bargreen Ellingson is incorporated in the State of Washington and has its principal place of business in Tacoma, Washington.

- Bargreen Ellingson has not purposefully availed itself of the privilege of doing business in Texas.

- This case does not arise out of or relate to Bargreen Ellingson's contacts, if any, with Texas such as to allow the courts of Texas to exercise specific jurisdiction over Bargreen Ellingson. Safeway purchased the subject chair through a purchase contract formed with Bargreen Ellingson in California. J.H. Carr and Sons Manufacturing, also a Washington resident, then manufactured the chair and shipped it to the address provided by Safeway. Bargreen Ellingson did not send the chair to Texas.

- Bargreen Ellingson does not have continuous or systematic contacts with Texas that would make it amenable to the general jurisdiction of the courts of Texas.

- Bargreen Ellingson is not "at home" in Texas, is not incorporated in Texas, and does not have its principal place of business in Texas.

In support of the preceding statements, Bargreen Ellingson attached to its special appearance the affidavit of its owner and president. The affidavit further states that Bargreen Ellingson did not intend to serve the Texas market by selling the chair at

issue to Safeway and that it did not design the chair at issue for the Texas market, advertise the chair at issue in Texas, or establish channels of regular communication with Texas customers.

During the special-appearance hearing,[10] Bargreen Ellingson's counsel argued that the trial court did not have specific or general jurisdiction over Bargreen Ellingson. Bargreen Ellingson's counsel explained that Bargreen Ellingson is a foreign corporation that is not at home in Texas and does not have continuous and systematic contacts with Texas and that the contacts, if any, that it had with Texas did not give rise to the facts of "this litigation." Bargreen Ellingson's counsel also stated that Bargreen Ellingson does not meet the "stream of commerce" test because it did not conduct additional activities directed towards the Texas market.

Bargreen Ellingson's counsel stated that Bargreen Ellingson does not have an office in Fort Worth and that the Fort Worth office Anderson referenced in her response to the amended special appearance belongs to Bargreen Ellingson of Texas, LP—not Bargreen Ellingson, Inc. To support his argument, Bargreen Ellingson's counsel asked the trial court to take judicial notice of a printout from the Tarrant Appraisal District showing that the business located at 2450 Handley Ederville Road in Fort Worth is listed under the business name of Bargreen Ellingson of Texas and

_____

[10]We set forth a summary of what transpired during the special-appearance hearing. However, we rely on the evidence, not the arguments and explanations that the parties gave during the hearing, in concluding that the record supports the trial court's order granting Bargreen Ellingson's special appearance.

19

shows the owner as Bargreen Ellingson of Texas, LP. Bargreen Ellingson's counsel also argued that Bargreen Ellingson of Texas, LP's contacts cannot be attributed to Bargreen Ellingson, Inc. because Anderson did not plead jurisdictional piercing of the veil or alter ego.

Anderson responded by admitting into evidence printouts from Bargreen Ellingson's website, copies of printed pages from the Greater Fort Worth Yellow Pages, copies of Bargreen Ellingson's catalog, and photos of the Fort Worth location. The trial court allowed Anderson to testify, for purposes of the record, as to what she had been told by the employees at the Fort Worth location. On cross-examination, Anderson testified that she had no knowledge of anyone who had purchased the chair in question from Bargreen Ellingson's interactive website.

### E. Analysis

At the outset of our analysis, we address Anderson's second issue complaining that the trial court erred by disregarding the evidence she admitted at the special-appearance hearing, specifically Bargreen Ellingson's catalog and website. The trial court stated in its order granting Bargreen Ellingson's special appearance that it had "considered the submissions, *as well as the evidence*, and arguments and authorities of counsel." [Emphasis added.] Moreover, the undisputed evidence reflected that the Fort Worth location referenced in Bargreen Ellingson's catalog and on its website was Bargreen Ellingson of Texas, LP, which is a separate legal entity from Bargreen

20

Ellingson, Inc.[11]    Anderson never sued Bargreen Ellingson of Texas, LP. Accordingly, we overrule Anderson's second issue.

With regard to Anderson's fifth issue challenging the factual sufficiency of the evidence to support the trial court's order granting Bargreen Ellingson's special appearance, the undisputed evidence shows that the chair at issue was contracted for in California and was shipped directly to the Safeway in Mansfield by J.H. Carr and Sons Manufacturing, which is located in Washington. Bargreen Ellingson thus did not contract for the chair at issue in Texas, nor did it deliver the chair to Texas. And as stated above, "awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum [s]tate." *CSR Ltd.*, 925 S.W.2d at 595 (quoting *Asahi Metal*, 480 U.S. at 112, 107 S. Ct. at 1032).

In Anderson's attempt to establish additional facts that Bargreen Ellingson did more to purposefully avail itself of the privilege of conducting activities within Texas than just have its chair swept up into the stream of commerce, she pointed to

---

[11]Additionally, Anderson did not plead a veil-piercing or alter-ego theory as a basis to impute Bargreen Ellingson of Texas, LP's contacts with Texas to Bargreen Ellingson, Inc., nor did she offer any evidence that Bargreen Ellingson, Inc. exerted sufficient dominion or control over Bargreen Ellingson of Texas, LP to support an alter-ego theory of general jurisdiction. *See Olympia Capital Assocs., L.P. v. Jackson*, 247 S.W.3d 399, 415 (Tex. App.—Dallas 2008, no pet.) (holding that any issue on appeal as to an alter-ego theory for jurisdictional veil-piercing was not preserved because the receiver did not plead alter ego and did not offer any evidence in support of alter-ego theory).

21

evidence that Bargreen Ellingson had a website,[12] as well as a catalog that could be

sent to Texas. But Anderson had no evidence that the chair at issue was purchased

using Bargreen Ellingson's website. Moreover,

> [e]vidence of a website (irrespective of whether it is interactive) simply illustrates the potential for activity from the forum in question and the website owner's knowledge of that potentiality. It does not illustrate actual use or its extent. In short, there needs to be more than the existence of a website (whether interactive or not) to support an inference that the forum was targeted by the website owner or that the latter directed its marketing efforts at the forum. *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 576 (Tex. 2007) (stating that a nonresident defendant that *directs* marketing efforts to Texas in the hope of soliciting sales may be subject to suit in Texas for alleged liability arising from or relating to that business). And, the additional evidence or conduct is missing here.
>
> . . . .
>
> Nor do we have any idea of how many people access its website on any given day, how many are from Texas, or whether they utilize it for anything other than informational purposes. Nor do we know if [the defendant] structured its website or any other marketing effort in some way to target people in Texas, as opposed to residents of this nation's other forty-nine states and the other innumerable nations and countries on this earth wherein people have internet access. It is conceivable to suggest that the company should have reasonably known that someone in Texas could access its site, but more is needed than that if the lessons of *TV Azteca* are to be heeded.

---

[12]In her reply brief, Anderson points to the affidavits that she attached to her combined motion for rehearing and new trial, which included the affidavit of a person who repairs computers and runs an internet gift business and an affidavit from a research librarian affiliated with UT Southwestern Medical Center. Although the affidavits set forth opinions regarding the user-friendliness of Bargreen Ellingson's website and state that a Fort Worth location is listed on the website, the affidavits do not contain evidence relevant to the jurisdictional analysis.

*Retire Happy, L.L.C. v. Tanner*, No. 07-16-00134-CV, 2017 WL 393984, at *5 (Tex. App.—Amarillo Jan. 27, 2017, no pet.) (mem. op.). Bargreen Ellingson's website had no connection to and thus was not substantially related to the operative facts of this case. And though Anderson established that Bargreen Ellingson's website and catalog both list a Fort Worth location (Bargreen Ellingson of Texas, LP), she never made Bargreen Ellingson of Texas, LP a party to this suit. We therefore cannot conclude that Bargreen Ellingson purposefully availed itself of the privilege of conducting activities in Texas. And without proof of purposeful availment—the first prong needed to prove specific jurisdiction—that avenue of gaining personal jurisdiction over Bargreen Ellingson is closed to Anderson. *See id.*; *see also C.W. Brown Mach. Shop, Inc. v. Stanley Mach. Corp.*, 670 S.W.2d 791, 792–94 (Tex. App.—Fort Worth 1984, no writ) (holding that trial court lacked jurisdiction over Massachusetts company that advertised in a national publication but had no other contacts with Texas).

We therefore hold that the uncontroverted evidence presented by Bargreen Ellingson in support of its special appearance is factually sufficient to demonstrate that the trial court lacks jurisdiction over Bargreen Ellingson. Because the evidence is factually sufficient to support the trial court's order granting Bargreen Ellingson's special appearance, we overrule Anderson's fifth issue.[13]

---

[13]In her "Conclusion" section, Anderson references "*Daimler.*" *See Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. 746 (2014). Anderson's brief, however, does not advance a general jurisdiction theory, and she only briefly mentions in her letter brief to the trial court following the special-appearance hearing that Bargreen Ellingson is

## VI. Anderson's Challenge to Safeway's Evidence of Nonreceipt of Her Responses to Request for Admissions

In the "Argument" section of her first amended brief, which appears to correspond to Anderson's sixth issue, she argues that the trial court erred by accepting Safeway's "allegation, unsupported by evidence, that Appellant Pro Se did not send the answers to Admissions, Defendant's First Set of Interrogatories, in a timely manner."[14] In the last sentence of the second paragraph of her "Summary Of Argument" section, Anderson further argues,

> Because the District Court should have excluded Defendant's testimony and allegations that were not supported by evidence, the court's ruling in favor of the Defendant is so contrary to the weight of Defendant's lack of evidence as to be clearly wrong and unjust and would deny Appellant due process as guaranteed by the 5th and 14th Amendments of the U.S. Constitution.

### A. Applicable Law

Under the Texas Rules of Civil Procedure, "[s]ervice by mail . . . shall be complete upon deposit of the document, postpaid and properly addressed, in the mail." *See* Tex. R. Civ. P. 21a(b)(1). Furthermore, rule 21a sets up a presumption that

---

"at home" in Texas because of its "interactive and globally accessible website." Moreover, just as the Court held in *Daimler*—that Daimler was not at home in California—Bargreen Ellingson, a Washington corporation with its principal place of business in Washington, is not at home in Texas. *See id.* at 139, 134 S. Ct. at 761–62.

[14]Although Anderson couches her issue in terms of whether Safeway's counsel provided testimony about whether she sent her responses, the testimony she challenges dealt with whether Safeway *received* her responses—a fact that was within the personal knowledge of Safeway's counsel.

24

notice properly mailed was duly received. *Cliff v. Huggins*, 724 S.W.2d 778, 780 (Tex. 1987). "In the absence of evidence to the contrary, the presumption has the force of a rule of law." *Id.* However, the presumption is not "evidence" and vanishes when opposing evidence is introduced that the notice is not received. *Id.* The general rule is that an attorney's statements on the record, as an officer of the court, are considered evidence unless an objection is made. *See Holloway v. Arkansas*, 435 U.S. 475, 486, 98 S. Ct. 1173, 1179 (1978); *In re M.N.*, 262 S.W.3d 799, 804 (Tex. 2008).

## B. Evidence of Nonreceipt of Anderson's Responses at the Time the Motion for Summary Judgment Was Filed

At the outset of the hearing on Safeway's traditional motion for summary judgment, the trial court allowed both Safeway's counsel and Anderson to testify freely regarding whether Anderson was served with the request for admissions and whether Anderson's responses, if any, were received by Safeway. Neither party objected to such testimony on the ground that neither Safeway's counsel nor Anderson were under oath.

Safeway's counsel informed the trial court that she had sent Safeway's first request for admissions to Anderson[15] and that Anderson had signed for the documents on or about April 18, 2016. Safeway's counsel explained that the request for admissions sought to determine whether Anderson had any evidence that Safeway

---

[15]The certificate of service on the document reflects that it was sent by regular and certified mail, return receipt requested on April 13, 2016.

knew or should have known that there was an unsafe, unreasonably dangerous, or defective condition on the premises. The request for admissions specifically stated,

> Pursuant to Rule 198 of the Texas Rules of Civil Procedure, you are hereby requested to serve the undersigned with a written answer, either denying specifically the matters hereinafter listed or setting forth in detail the reasons why you cannot truthfully either admit or deny the matters. Please note that each of the matters hereinafter listed shall be deemed admitted unless, within thirty (30) days after service of the request, or within a time designated by the Court, you make and serve or cause to be served a written answer or objection addressed to the matter, as provided in Rule 198.

On or about May 13, 2016, Safeway's counsel received a document from Anderson entitled "Plaintiff's Second Amended Response To Defendant's, Safeway Tom Thumb d/b/a Tom Thumb Grocery['s], First Set Of Interrogatories/Requests For Production, Admissions[,] And Disclosure[s]," which did not include responses but instead requested a thirty-day extension to respond to Safeway's first set of interrogatories and specifically requested a response due date of June 13, 2016. Safeway's counsel informed the trial court that the parties never entered into a rule 11 agreement to extend the deadline for Anderson to respond to the request for admissions.

As of June 14, Safeway did not receive any responses from Anderson to the request for admissions. Due to the lack of response from Anderson, Safeway concluded that Anderson was deemed to have admitted that she had no evidence to proceed forward with a cause of action against Safeway for premises liability. Safeway thus filed a traditional motion for summary judgment on July 21, 2016.

Anderson told the trial court that she had received Safeway's request for admissions and that she had asked Safeway for a thirty-day extension on May 13. Anderson claimed that she had also emailed the response to the request for admissions on May 13. When the trial court asked Anderson if she had copies of her responses to the request for admissions that she had allegedly emailed to Safeway on May 13, Anderson said that she only had "print screens," showing the date that she had sent them and the person to whom she had sent them. Anderson agreed that Safeway's counsel did not agree to an extension. Anderson said that she had attempted to mail her responses on June 13 but discovered that the post office was closed, so she requested an extension until June 17. Anderson told the trial court that she discussed the extension over the phone with Safeway's counsel, who did not say "yes" or "no" to the extension.[16] Anderson said that she mailed all of her responses on June 17.

The trial court inquired whether Safeway's counsel had ever been served with Anderson's responses to the request for admissions, and Safeway's counsel responded, "Not until after I filed this summary judgment," which would have been after July 21. Safeway's counsel further explained that Anderson's responses do not specifically deny anything:

---

[16]Safeway's counsel said that she did have a phone conversation with Anderson on or about June 13 in which Anderson asked if she had received the medical records that Anderson had emailed to her; Safeway's counsel acknowledged receipt of the medical records.

27

So, you know, I asked: "Do you have any knowledge prior to this incident that the chair was dangerous?"

And there's no denial[;] there's no objection.

She just basically says: "The chair in which plaintiff was sitting flipped out, thrusting her forward and propelling her onto the floor. Said action and movement of the chair was unsafe."

Anderson responded that her evidence that the chair was unsafe was based on her personal experience—that "[t]he chair flipped out behind [her] and thrust [her] onto the floor"—and the video of the incident, as well as the incident report.

The trial court viewed the video of Anderson's chair incident and then granted Safeway's motion for summary judgment.

## C. Anderson Did Not Preserve Her Complaint Regarding Safeway's Counsel's Testimony

The situation presented here is similar to that described in *Mathis v. Lockwood*:

At the post-judgment hearing, Lockwood's counsel testified that notice was sent to Mathis, and Mathis denied receiving it. While statements by neither were under oath, the oath requirement was waived when neither raised any objection in circumstances that clearly indicated each was tendering evidence on the record based on personal knowledge on the sole contested issue. *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (holding attorney's unsworn statements tendered as evidence were sufficient absent objection); *see also Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005) (holding pro se litigants are governed by the same rules as attorneys).

166 S.W.3d 743, 744–45 (Tex. 2005).

As in *Mathis*, Anderson did not object to Safeway's counsel's testifying about facts within her personal knowledge concerning the lack of receipt of Anderson's

28

responses to the request for admissions. The trial court was therefore free to depend on Safeway's counsel's statements as evidence in this case. *See Holloway*, 435 U.S. at 486, 98 S. Ct. at 1179; *M.N.*, 262 S.W.3d at 804; *Mathis*, 166 S.W.3d at 745. To the extent that Anderson now complains on appeal that the trial court could not rely on Safeway's counsel's statements as evidence, we conclude that Anderson has not preserved that issue for review. *See* Tex. R. App. P. 33.1(a).

### D. Safeway Rebutted the Presumption of Receipt of Anderson's Responses

To the extent that Anderson attempts to raise a fact issue regarding her claim that she timely served responses to the request for admission, she has failed. She attached no evidence to her summary-judgment response. She did, however, attach evidence to her combined motion for rehearing and new trial, which included print screens of her "sent mail" folder and "green card" information that Anderson printed from the United States Postal Service's website. The print screens of Anderson's "sent mail" folder shows only that she emailed Safeway's counsel a request for an extension of time on June 13, 2016; it does not demonstrate when her responses to the request for admissions were sent. Moreover, the "green card" information that Anderson printed from the United States Postal Service's website shows that something was delivered to Dallas on June 17, but the record does not show what document that "green card" information corresponds to. Even presuming that the "green card" information sheet pertains to Anderson's responses to the request for admissions and that it raised a presumption of service under Texas Rule of Civil

29

Procedure 21a, Safeway rebutted that presumption with unobjected-to testimony that it did not receive Anderson's responses to the request for admissions until after Safeway filed its motion for summary judgment on July 21, which was more than two months after the deadline mandated by rule 198.2 and more than one month after the implicitly extended deadline. *See Cliff*, 724 S.W.2d at 780 (stating that presumption of receipt under rule 21a "vanishes when opposing evidence is introduced that the letter was not received").

Having determined that Anderson did not preserve her complaint regarding Safeway's counsel's testimony and because that testimony rebutted the presumption of receipt, we overrule Anderson's sixth issue.[17]

---

[17]As a result, the request for admissions were deemed admitted without the necessity of a court order on June 14 because Safeway had not received responses from Anderson by the implicitly extended deadline. *See* Tex. R. Civ. P. 198.2. We are, however, mindful of the supreme court's stance on using deemed issues to support summary judgment. *See generally Marino v. King*, 355 S.W.3d 629, 634 (Tex. 2011) ("Good cause for the withdrawal of the deemed admissions exists in this case because there is no evidence of flagrant bad faith or callous disregard for the rules and nothing to justify a presumption that Marino's defense lacks merit."); *Wheeler*, 157 S.W.3d at 444 (holding that trial court should have granted a new trial and allowed the deemed admissions to be withdrawn upon learning that the summary judgment was solely because the responses were two days late). To the extent that Anderson's fifth issue can be construed as challenging the factual sufficiency of the trial court's summary-judgment order, the deemed admissions are sufficient to support the trial court's judgment because the timing of the responses makes the situation here different from what the courts dealt with in *Marino* and in *Wheeler*.

Anderson admits that Safeway did not agree to either of the extensions that she requested regarding the deadlines for her responses to the request for admissions, and the record does not contain any rule 11 agreements extending the response deadline. Safeway implicitly extended the deadline to the date that Anderson requested and then

## VII. Conclusion

Having overruled Anderson's six issues, we affirm the trial court's order granting Safeway's motion for summary judgment and the trial court's order granting Bargreen Ellingson's special appearance.

Per Curiam

Delivered: May 23, 2019

---

waited another five weeks before filing its summary-judgment motion. At that point, Anderson's responses were more than two months past the original deadline. Even after Safeway filed its motion for summary judgment, alerting Anderson of the deemed admissions, she did not request to withdraw the deemed admissions. Under the unique facts here, we conclude that Anderson's actions demonstrate callous disregard for the rules. *See Unifund CCR Partners v. Weaver*, 262 S.W.3d 796, 797 (Tex. 2008) (approving a summary judgment based on deemed admissions after the decision in *Wheeler* even though the nonmovant's responses to the movant's requests for admissions were on file at the time of the trial court's judgment); *In re Seizure of Gambling Proceeds*, 388 S.W.3d 874, 878 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (affirming summary judgment based on deemed admissions after concluding that responses to admissions that were sent eight days late—because appellant had calculated the response due date based on the date it received the request for admissions—were untimely). Moreover, even if Anderson's responses to the request for admissions could be considered, they were not proper objections to the requests. *See Unifund CCR Partners*, 262 S.W.3d at 797 (holding that Weaver's responses to requests for admission, even if they could be considered, were not proper objections to the requests). Accordingly, we overrule Anderson's fifth issue to the extent it can be construed as challenging the factual sufficiency of the evidence to support the trial court's summary-judgment order.